HIRAM L. FRENCH, plaintiff in error, vs. LUTHER ROLL, defendant in error.

When there is conflicting evidence before a jury, it is their duty to weigh it, and if, in doing so, they render a just verdict according to the proper construction and weight of the evidence, a new trial ought not to be granted.

Complaint on appeal, from Sumter. Tried before Judge KIDDOO, September Term, 1857. Verdict for plaintiff, and motion for new trial.

This was an action brought by Roll against French, on two notes, one for $900 80, and one for $32 82.

The defendant pleaded, first, the general issue; second, payment or set-off to the amount of seven hundred dollars—the value of a carriage and buggy received by plaintiff, and which he promised to credit on defendant's note, but which he failed to do.

Plaintiff offered and read to the jury the notes, and closed.

Defendant (by agreement,) read the affidavit of Geo. R. Wilson, to the effect, that in the fall of 1852, in the city of Augusta, he heard a conversation between plaintiff and defendant, in relation to a debt of about a thousand dollars, due on a note or notes from defendant to plaintiff. Defend-

ant claimed a credit of $700, for a carriage and buggy which defendant let him have; plaintiff agreed to take the two vehicles and credit defendant with seven hundred dollars; defendant did not reside in Augusta at the time; had previously removed from that place, and was then on a visit there; heard French say that Roll had notified him by letter after he sold the buggy.

Plaintiff read in reply, the answers to interrogatories of Samuel C. Mustin, to the effect, that he knew of a carriage and buggy left by French at Roll's shop in Augusta, as collateral security for a note on defendant, payable to Roll, for $900 80. In the summer of 1852, defendant came to Mr. Roll's shop; the coach and buggy were still there; defendant told plaintiff to sell the coach for $500 and the buggy for $200, and place the amount, when sold, as a credit on his note, but warned him at the time that if he sold them at less prices than that named, he would hold him responsible for the difference; they were second-hand, repainted, and at the time, the carriage was worth not more than $300, and the buggy from $175 to $200. The buggy was sent by railroad to Newnan and there sold for $200; expenses of transportation, &c., $29 50, leaving a balance of $170 50 net. That there is due to plaintiff for storage on buggy and coach, $102 00, which deducted from the $170 50, leaving the sum of $68 50 to be credited on the note. The carriage is still on hand, never sold, Roll never having been able to sell it at the price fixed on it by defendant, $350 being the highest offer ever had on it, and that is $50 more than it would now sell for. Witness is Mr. Roll's book-keeper and salesman, and fully acquainted with all his business, and never heard any thing about a purchase of the coach and buggy by Roll.

*James Hurlburt* answers, that the carriage and buggy were in witness' shop sometime, and they were afterwards removed to Roll's shop; carriage worth from 300 to 400 dollars; buggy worth about 175 or 200 dollars, but in the Au-

gusta market about $150. Does not know where they are now, or what has become of them.

*R. V. Goetchius* answers, that in the summer of 1852, French came to Roll's carriage shop; witness was there assisting as salesman and foreman; the carriage and buggy were there at the time; I learned from Mr. French that they had been left there as collateral security for a debt due by him to Roll; defendant limited the carriage at $500, and the buggy at $200, which were prices so far above their value in Augusta, as to preclude their being sold, and I so informed him at the time; the carriage was a second-handed one, which had been repaired and done up; would not bring more than $350, and at present $300; the buggy would have brought $175; they are both without harness; witness exerted himself to sell them, but could not. Having quit Roll's employment in 1853, witness cannot say what has become of the carriage and buggy; he left them there; found them there when he first went there; has heard both Roll and French say that they were there as collateral security.

The jury found for plaintiff $826 37, with interest from 1 June, 1853.

Defendant moved for a new trial on the grounds that the verdict was contrary to law, the evidence, and charge of the Court.

The Court overruled the motion, and defendant excepted.

DUDLEY; and McCOY & HAWKINS, for plaintiff in evidence.

GEO. W. FISH, *contra.*

*By the Court.*—McDONALD J., delivering the opinion.

A new trial was moved for in this case on three grounds. 1st. That the jury found contrary to evidence. 2d. The jury found contrary to law.

3d. The jury found contrary to the charge of the Court.

The Court everruled the motion, and that judgment of the presiding Judge in the Court below is excepted to and makes this case.

There is evidence on both sides of this case, and the jury had a right to weigh it and render a verdict according to their own conclusion, upon a full consideration of it. The notes were read in evidence. The witness Wilson testified that he heard a conversation in the fall of 1852, between the plaintiff and defendant, in which the defendant claimed a credit of seven hundred dollars, on a note of about $1,000, for a carriage and buggy, which defendant had of plaintiff. The plaintiff agreed to take the two vehicles and give the credit. He heard the defendant say that the plaintiff had notified him when he sold the buggy.

Samuel C. Mustin testified that the carriage and buggy were left with the plaintiff as collateral security for the payment of the notes; that defendant had called at plaintiff's shop and directed him to sell the carriage at $500 and the buggy at $200, and told him if he sold them for less he would hold him responsible. He directed him to put the amount, when received, as a credit on the note. This was in January, 1852. The buggy was sent to Newnan on the 15th June, 1853, and sold. The carriage is still on hand as the property of French. The buggy was sold for the gross sum of $200.

Ryner V. Goetchius confirms the testimony of Mustin, that the carriage and buggy were left as collateral security, and this he heard from the defendant in different conversations.

The jury, in making up their verdict, deducted the full amount for which the buggy was sold.

They had a right to weigh the evidence, and we think that they rendered a just verdict, according to the proper construction and weight of the evidence, and we will not disturb it.

The verdict violated no principle of law.

The bill of exceptions, which is equivalent to none at all, sets forth no charge of the Court, nor does any charge appear in the record.

Judgment affirmed.